NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230406-U

NO. 4-23-0406

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 22, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ANTONIO BEALER, | ) | No. 17CF185 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court did not find a *bona fide* doubt as to defendant's fitness, so it was not obligated to hold a fitness hearing.

¶ 2  In December 2021, the trial court ordered a fitness evaluation for defendant Antonio Bealer. The evaluation, which found defendant to be fit and sane, was submitted to the court. The court did not hold a fitness hearing after receiving the fitness report. Defendant was then convicted of aggravated battery and unlawful possession of a weapon by a felon in the custody of the Illinois Department of Corrections (DOC).

¶ 3  On appeal, defendant argues the trial court erred when it failed to hold a fitness hearing after ordering the fitness evaluation. We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In June 2017, defendant was charged with aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)) and unlawful possession of a weapon by a felon in DOC custody (*id.* § 24-1.1(b)). The charges alleged defendant, an inmate at a DOC facility, "possessed a homemade object made from a sharpened nail clipper with cloth wrapped around it as a handle," which he used to stab Correctional Officer Zachary Sereg multiple times in the head. Defendant initially stated that he wished to hire his own attorney but requested the public defender in the interim. The trial court appointed the public defender's office to represent defendant.

¶ 6        In October 2017, defendant again expressed a desire to hire his own attorney, but he filed a motion to proceed *pro se* since the assistant public defender representing him, Randell Morgan, was retiring. The trial court initially intended to allowed defendant to proceed *pro se*, but after defendant's counsel informed the court of "voluminous" mental health records defendant had sent him, the court determined it would not vacate the appointment of the public defender until his counsel had reviewed the mental health records, stating, "I am waiting to have a review of those records by Mr. Morgan or the public defender to determine whether or not you need a fitness evaluation before I allow you to" proceed *pro se*. The court continued, "If Mr. Morgan or his successor Mr. [Scott] Ripley has a concern about your fitness, then I will probably order an evaluation *** and we'll go from there."

¶ 7        Defendant continued to request to proceed *pro se* at various hearings. At a March 26, 2018, hearing, defendant, while explaining his prior intent to proceed *pro se*, stated, "[Y]ou gave me a *pro se* hearing right there; and the State objected to my mental health; and we supposed to have a fitness hearing ***." The trial court noted it had entered an order for production of mental health records, but the records had not made it to defendant or Ripley. The court asked defendant, "Are you asking for a fitness evaluation at this time before you decide whether to represent

yourself?" Defendant responded affirmatively; however, the court directed Ripley to locate the mental health records first.

¶ 8        At an April 2018 hearing, Ripley stated defendant had provided him with "about a thousand pages worth of documents" and he had reviewed "probably 75%." Ripley and defendant had "been communicating well." Defendant expressed his continued desire to proceed *pro se* but not until "[a]fter the fitness hearing." The trial court stated "We haven't had a fitness hearing. I don't think I have even ordered one. Mr. Ripley is reviewing the documents *** to determine I suppose whether or not to ask for a fitness hearing." Defendant elected to proceed with Ripley as his attorney.

¶ 9        Over many hearings, Ripley reported defendant sent him a large amount of materials and requested several continuances. At a hearing in March 2019, Ripley stated defendant had raised two issues with him: "the possibility again of him proceedings *pro se* and also *** a fitness matter." Ripley requested a continuance to further discuss the matter with defendant. A pattern continued of defendant sending Ripley large amounts of material and raising a variety of issues for Ripley to consider, and Ripley requesting a continuance to review the new material and potential claims.

¶ 10        In April 2021, Ripley filed a motion to withdraw as counsel, indicating defendant no longer wanted Ripley to represent him due to what he viewed as a "conflict of interest." At the hearing, Ripley explained they had strong disagreements on how the case should be handled and defendant wished to proceed *pro se*. Defendant stated he wished to have a different attorney appointed because the public defender's office was "prejudice[d]" in representing him. The crux of the disagreement appeared to be over what evidence and motions to present. After an extended

discussion on defendant's disagreements with his attorney and his options, the following discussion occurred:

> "THE DEFENDANT: Okay, Judge. At this time, I would like to go *pro se* at this time; but I'm up for a fitness hearing right now.

> THE COURT: Well, no. I'm not giving you a fitness hearing.

> THE DEFENDANT: You already agreed to it in 2017.

> THE COURT: No. I'm not doing a fitness hearing, [defendant].

> THE DEFENDANT: No. I'm saying I'm up for it already. You don't remember?

> THE COURT: I don't know what you are talking about."

After admonishing defendant, the court allowed him to proceed *pro se*.

¶ 11        Defendant filed several lengthy motions, making a wide variety of claims. In a June 14, 2021, motion, entitled "Motion for Substitution of Judge/Brady/Bagley/Discovery," defendant alleged, in part, that a fitness hearing was granted in October 2017 but never completed. Defendant argued the fitness hearing was "needed because it's exculpatory evidence." At a hearing the same day, defendant stated, "I'm a criminally insane inmate, and my mental health records is right there for the last 16 years. You put me in for a fitness hearing." Defendant also stated a doctor was "supposed to evaluate me for the last four years."

¶ 12        At an August 2021 hearing, the trial court reviewed defendant's pending motions:

> "THE COURT: Okay. But my question for you is we were in court the last time on June 14th.

> THE DEFENDANT: Yes.

THE COURT: We dealt with the motion that you filed for substitution of judge, right?

THE DEFENDANT: Yes.

THE COURT: And we dealt with your evidentiary, your hearing—your request for an evidentiary hearing, I think.

THE DEFENDANT: No it was request for—it was a request for *** mental health evaluation under 160-day rule or speedy trial rule.

THE COURT: Well, I am showing a motion for substitution of judge we dealt with.

THE DEFENDANT: Right.

THE COURT: And we dealt with your motion for a private investigator.

THE DEFENDANT: No, not yet. That is the one on the witness tampering.

THE COURT: You are saying the witness tampering has to do with this case?

THE DEFENDANT: Yes,

THE COURT: Okay. So you are requesting more time on these motions?

THE DEFENDANT: Yes."

¶ 13    On September 2, 2021, defendant filed a motion titled "Permission/Leave Request for Right to Investigator and Expert Witness." In part, defendant requested an expert witness psychologist or psychiatrist to demonstrate he had been falsely diagnosed as mentally ill.

¶ 14    At an October 2021 hearing, the State asked for a continuance due to some confusion over whether all parties had copies of each of defendant's motions.

¶ 15    At the next hearing in November 2021, defendant asked for a continuance because he did not have access to certain legal documents. The trial court set a hearing for December and stated that, "Any pretrial motion you have, we're going to argue on that day."

¶ 16    In a motion filed November 23, 2021, titled "Judicial Inquiry Board/Chief Judge Filing for Criminal Charges—Complaint—Brady Law for Unconstitutional Suppressions—Discovery Witness Tampering—Obstruction of Justice—Impeding an Investigation—Blocking Access to Court—Collusion—Aiding," defendant again asserted the fitness hearing had been granted in October 2017, referred to his argument as to the fitness hearing in June 2021, raised his history of mental health diagnoses, and argued that the fitness hearing "should have been given."

¶ 17    The trial court began the December 20, 2021, hearing by asking defendant if he wanted to continue *pro se*. The court pointed out defendant had encountered issues in his relationship with the prior public defender's office. Defendant stated the court had denied him the right to private counsel, and the following discussion occurred:

"THE COURT: I did not deny you *** getting your own attorney. You can hire your own attorney at any point. I think I denied me appointing private counsel.

THE DEFENDANT: Right. From the Illinois State Bar.

THE COURT: Well, both Mr. Morgan and Mr. Ripley were with the Illinois State Bar Association.

THE DEFENDANT: Right, but I was specifically pertaining to Illinois Constitution 113 slash 3 slash B that, you know, when the appointed court counsel, if you all have any contact then we can to my understanding get one from the State Bar due to because I had a conflict with him; and I was going to pay for my own expenses. And that was the issue.

THE COURT: What was the nature of the conflict?

THE DEFENDANT: The nature of the conflict was both was working with the adversarial system. I had put together an investigation, and they was working for the adversarial system against me; and—

THE COURT: Which system are you referring to?

THE DEFENDANT: I'm referring to the State's Attorney and the United States government.

THE COURT: So you think any public defender would have a conflict of interest?

THE DEFENDANT: Well, them two did ***. ***

* * *

THE DEFENDANT: Right. But my issue was there is that the reason I need this attorney is because when I sent evidentiary hearing it shows that my communication to society is blocked by my, by the State's Attorney's witnesses.

THE COURT: You are talking about DOC people?

THE DEFENDANT: Well, this is the American general. I'm under involuntarily servitude; and this is what I was trying to show that I was banned of all federal and state rights in America; and I'm under involuntary servitude, meaning all I do is sit in my cell. I can't get no mail. I can't see society. I can't see my family. They have been trying to see me for 20 years. I can't do nothing because of the nature of this conspiracy I'm under.

THE COURT: Okay."

The court went on to explain why it wanted to discuss defendant's representation:

"THE COURT: Okay? We have a new public defender; and I am trying to determine if you want a lawyer to represent you, I can appoint the public defender; and I'm wondering about doing a fitness evaluation as well—

THE DEFENDANT: Okay.

THE COURT: —because of all these things that you are bringing up now today.

THE DEFENDANT: All right.

THE COURT: So my question is do you want me to do that, and then we can look into some of these fitness issues?

THE DEFENDANT: Yes. We can do that, ma'am.

THE COURT: Well, if I appoint the public defender, I don't want to get in a situation where we spend a year with the public defender and then you decide you don't want the public defender anymore.

THE DEFENDANT: Well, Judge—

THE COURT: So that's why I'm trying to figure out if you want the public defender or don't want the public defender."

¶ 18　　The trial court took a recess to give defendant a chance to speak to the assistant public defender present. When the recess ended, the court spoke to the assistant public defender, who stated, "[Defendant] has decided that he does not require the services of the public defender at this time. However, based upon my conversation with him, I do think that there's a need to have him evaluated both for fitness and his mental state at the time of the offense." The court agreed and appointed the public defender

- 8 -

"for purposes of getting the fitness and insanity evaluations completed. I do have some concerns after having more detailed conversation again today with [defendant]. So the appointment is limited at this point to obtaining the records that you need and referring the matter to Dr. [Terry] Killian. We'll get the evaluation; and then depending on the results of the evaluation, if [defendant] decides at that point that he wants an attorney, the I will reconsider appointing you beyond that; and if he wants to go *pro se* then I will re-evaluate that as well at that time."

The court continued defendant's pending pretrial motions, stating that, "[W]e'll deal with those after we get the fitness evaluation. Okay?" Defendant agreed. As the court discussed logistics with the parties, defendant raised a question with the court:

"THE DEFENDANT: Will this be the next court date, or will this be the fitness hearing?

THE COURT: No. It's the next court date.

THE DEFENDANT: Okay. So in between that time the fitness hearing will be done?

THE COURT: Well, we're not going to do a fitness hearing yet.

THE DEFENDANT: Okay.

THE COURT: First we're going to have an evaluation completed by a doctor."

¶ 19   The trial court's written order for a fitness evaluation was a form order that had two options under "*Bona Fide* Doubt Matter." The court checked the box for the second option, which stated:

"Pursuant to 725 ILCS 5/104-11(a), the defense has requested that a qualified expert be appointed to examine the defendant to determine [if] a *bona fide* doubt as to fitness may be raised. There has been no finding by the court that a *bona fide* doubt as to fitness has actually been raised, however, the court, in its discretion, finds that there is a basis to grant the motion for an examination. Speedy trial is tolled. 725 ILCS 5/103-5(a). *P. v. Sonntag* 128 Ill. App. 3d 548."

¶ 20 In March 2022, the trial court held a status hearing. Counsel stated, "We received an e-mail from Dr. Killian on Wednesday, March 23rd, indicating he was going to find [defendant] both fit and sane." The court continued the hearing for the written report.

¶ 21 At a May 2022 hearing, counsel filed the psychiatric examination with the trial court. The court acknowledged it received the report:

"And I did, I did receive a courtesy copy of that report finding [defendant] fit and also no insanity defense for the time of the offense. I will have that filed and sealed in the court file. And then that would conclude *** your appointment, unless [defendant] has decided he wants you to represent him in this case."

Defendant confirmed he wished to proceed *pro se*.

¶ 22 Defendant's jury trial commenced in March 2023. At the trial, defendant admitted to stabbing Correctional Officer Sereg, but he maintained that he acted in self-defense. The jury found defendant guilty on both counts.

¶ 23 At the sentencing hearing, defendant requested the trial court proceed without him. Defendant was removed from the courtroom. The court sentenced defendant to 28 years' incarceration on both counts.

¶ 24 This appeal followed.

¶ 25                           II. ANALYSIS

¶ 26          On appeal, defendant argues the trial court erred in failing to hold a proper fitness hearing after finding a *bona fide* doubt as to his fitness.

¶ 27          Defendant argues he preserved this claim for review in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (finding that to preserve an issue for review, a party must raise the issue at trial and in a written posttrial motion). Defendant raised a claim mentioning mental health records in his posttrial motion, although, like many of defendant's *pro se* motions, the claim is handwritten and difficult to read. However, we need not determine whether defendant preserved his claim because he alternatively requests review under the second prong of the plain-error doctrine.

¶ 28          The second prong of plain-error review is equivalent to reviewing for structural error, requiring automatic reversal where the error serves to erode the integrity of the judicial process and undermine the fairness of a defendant's trial. *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). Fitness for trial involves a fundamental right; consequently, defendant's claim is reviewable as plain error under the second prong. See, *e.g.*, *People v. Shaw*, 2015 IL App (4th) 140106, ¶ 23. The first step in plain-error review is to determine whether a clear or obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21.

¶ 29          The due process clause of the fourteenth amendment bars prosecuting a defendant who is not fit to stand trial. *People v. Weeks*, 393 Ill. App. 3d 1004, 1008 (2009). The United States Supreme Court has articulated that the constitutional test for mental competence is based on whether a defendant has a rational as well as factual understanding of the proceedings and a sufficient present ability to consult with counsel to a reasonable degree of rational understanding. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). In Illinois, the standard is codified in section

104-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-10 (West 2020)). Section 104-10 states, "A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *Id.*

¶ 30 Section 104-11 of the Code also addresses when the issue of a defendant's fitness to stand trial is raised. In relevant part, section 104-11 states:

> "(a) The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court at any appropriate time before a plea is entered or before, during, or after trial. When a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.

> (b) Upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if a *bona fide* doubt as to his or her fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination." *Id.* §§ 104-11(a), (b).

¶ 31 Defendants are presumed fit to stand trial. *People v. Hanson*, 212 Ill. 2d 212, 221-22 (2004); 725 ILCS 5/104-10 (West 2020). However, once a *bona fide* doubt is raised as to a defendant's fitness, the trial court must hold a fitness hearing before proceeding. *People v. Burton*, 184 Ill. 2d 1, 13 (1998).

¶ 32 The core question at issue in this case, therefore, is whether the trial court had a *bona fide* doubt as to defendant's fitness. "Relevant factors that the trial court may consider in assessing whether a *bona fide* doubt exists include (1) the defendant's behavior and demeanor, (2) prior medical opinions regarding the defendant's competence, and (3) defense counsel's

representations about the defendant's competence." (Internal quotation marks omitted.) *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 45. However, "there are 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.' " *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). A defendant may be fit for trial although his mind may be otherwise unsound. *People v. Easley*, 192 Ill. 2d 307, 322 (2000). That a defendant may suffer from mental disturbances or requires psychiatric treatment does not necessarily raise a *bona fide* doubt as to the defendant's fitness to understand the proceedings and assist in his defense. *Id.* "Fitness speaks only to a person's ability to function within the context of a trial; it does not refer to competence in other areas." *Eddmonds*, 143 Ill. 2d at 519-20. "If the trial court concludes that no *bona fide* doubt exists, then it need not conduct a fitness hearing." (Internal quotation marks omitted.) *Schnoor*, 2019 IL App (4th) 170571, ¶ 45.

¶ 33　　　　The question of whether a *bona fide* doubt as to the defendant's fitness exists is generally a matter within the trial court's discretion. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). "Where no fitness hearing was held, we will reverse a conviction and remand *** only where the trial court abused its discretion in failing to act on a *bona fide* doubt of the defendant's fitness." *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 31. "A trial court abuses its discretion only when its ruling is arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Santos*, 211 Ill. 2d 395, 401 (2004). "In evaluating the trial court's exercise of its discretion, we will keep in mind that the trial court is in a superior position to view the defendant's behavior firsthand and to

determine based on its observation whether the requisite doubt exists." *Nichols*, 2012 IL App (4th) 110519, ¶ 31.

¶ 34   In this case, the trial court's order checked a box stating "the defense has requested that a qualified expert be appointed to examine the defendant to determine [if] a *bona fide* doubt as to fitness may be raised." The order further stated, "There has been no finding by the court that a *bona fide* doubt as to fitness has actually been raised."

¶ 35   Defendant argues on appeal that the trial court's order was incorrect, because it was the court who "originated" the fitness concerns. However, defendant repeatedly requested fitness hearings or psychiatric evaluations in his voluminous motions and at the various hearings. The December 22, 2021, hearing was set for consideration of all defendant's pretrial motions. Defendant began raising a fitness claim at the June 7, 2021, hearing, when he elected to proceed *pro se*. Defendant continued to raise fitness and mental health evaluation claims during hearings and in the *pro se* motions. In defendant's November 23, 2021, motion, the final motion filed prior to the December 2021 hearing, defendant raised the need for a fitness hearing, referencing his prior diagnoses, arguing the fitness hearing "should have been given."

¶ 36   At the December 22, 2021, hearing, the trial court first sought to determine if defendant wanted to proceed *pro se* or have the assistance of a public defender. After defendant raised all his concerns about attorneys representing him, the court decided to have defendant speak to the public defender to determine if he wanted representation. The court then brought up the fitness evaluation, asking defendant if he wanted the public defender appointed, "and then we can look into some of these fitness issues?" However, the only party who had brought up fitness "issues" was defendant, in his motions.

¶ 37 Further, although the trial court mentioned having "some concerns" based on the conversation with defendant, the court had also been interacting with defendant for over four years at this point. Defendant had an expansive definition of what was relevant to his case, but he otherwise conducted himself appropriately in his interactions with the court, both when represented by counsel and when proceeding *pro se*. He answered the court's questions, filed motions, and was overall very engaged in the proceedings. Defendant on appeal does not point to any specific concerns that should have raised a *bona fide* doubt as to his fitness, and nothing during the hearings suggests he did not understand the "nature and purpose of the proceedings against him." See 725 ILCS 5/104-10 (West 2020)).

¶ 38 Therefore, the trial court's determination that there was no *bona fide* doubt as to defendant's fitness was not an abuse of discretion. Based on defendant's prior repeated requests for a fitness hearing and psychiatric evaluations, the court determined it was appropriate to order an examination to determine if a *bona fide* doubt as to defendant's fitness could be raised. See *id.* § 104-11(b). When the court received the results of that examination, it was clear there were insufficient concerns to give rise to a *bona fide* doubt about defendant's fitness to stand trial, and the court did not abuse its discretion in so finding. As there was no *bona fide* doubt, the court was not required to hold a fitness hearing. See *Schnoor*, 2019 IL App (4th) 170571, ¶ 49 (Where the trial court did not find a *bona fide* doubt to the defendant's fitness, the "defendant was not entitled to a fitness hearing after the psychiatrist's report was submitted to the court and parties [citation], and the court committed no error by agreeing to the parties' stipulation regarding the report's conclusions.").

¶ 39 In closing, we note that the clearest indication of the trial court's thinking was its written order of December 20, 2021, which specified that it was ordering a fitness evaluation to

help it determine if a *bona fide* doubt as to defendant's fitness had been raised. Absent this order, it would have been much more difficult for us to decipher the court's reasons and intentions, so the order possibly saved us from a misinterpretation of the court's unclear comments at various points in the history of the case. Consequently, it is worth reminding trial courts that clarity and accuracy in comments made in this context are important. See *id.* ¶ 50 (suggesting "that trial courts in similar situations explicitly state on the record that the court did not have a *bona fide* doubt of the defendant's fitness to stand trial when the court appointed the psychiatrist to examine the defendant").

¶ 40                                    III. CONCLUSION

¶ 41            For the reasons stated, we affirm the trial court's judgment.

¶ 42            Affirmed.