NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 250669-U

NO. 4-25-0669

IN THE APPELLATE COURT

FILED
May 26, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ANTONIO BEALER, | ) | No. 17CF185 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed defendant's postconviction petition alleging ineffective assistance of appellate counsel.

¶ 2    Defendant Antonio Bealer was charged with and convicted of two felony offenses and sentenced concurrently to 28 years' imprisonment on each charge; identification of the statutory basis for one of the charges is a central issue in this appeal and will be addressed below. This court affirmed the judgment on direct appeal. *People v. Bealer*, 2024 IL App (4th) 230406-U, ¶ 41, *pet. for leave to appeal denied*, No. 131217 (2025), *cert. denied*, 145 S. Ct. 1974 (2025).

¶ 3    This appeal arises out of defendant's petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)), asserting numerous claims of ineffective assistance of counsel. The trial court dismissed all claims as frivolous. Defendant now

appeals two of the issues. First, he argues his appellate counsel on direct appeal failed to challenge the sentence on one of his convictions, as he contends it was a conviction of a Class 2 offense but that he received a sentence in excess of that available for such an offense. Second, he argues that appellate counsel failed to have the notice of appeal in his direct appeal stricken while a motion for reconsideration was still pending in the trial court, resulting in issues not being preserved for appellate review.

¶ 4        Because we find that defendant's position on appeal is contradicted by the record, he failed to present an arguable basis for his claims of ineffective assistance. Consequently, we affirm the trial court's first-stage dismissal of his postconviction petition.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. The Charges

¶ 7        In 2017, a grand jury charged defendant with two counts under indictment. Under the subheading labeled "*COUNT 1 AGGRAVATED BATTERY*," the indictment alleges:

> "defendant on or about *February 13, 2017,* in committing a battery, in violation of 12-3 of Act 5 of Chapter 720 of the Illinois Compiled Statutes [section 12-3 of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3 (West 2016))], knowingly caused great bodily harm to *Correctional Officer Zachary Sereg,* in that the defendant stabbed Zachary Sereg about the head, knowing Zachary Sereg to be a correctional institution employee of the State of Illinois Department of Corrections, who was engaged in the performance of his authorized duties, *in violation of Section 12-3.05(d)(4)(i) of Act 5 of Chapter 720 of the Illinois Compiled Statutes, a Class 1 felony*." (Emphases in original.)

¶ 8        Count 2 of the indictment charged defendant with unlawful possession of a weapon

by a felon while in the custody of the Illinois Department of Corrections (DOC), a Class 1 felony (720 ILCS 5/24-1.1(b), (e) (West 2016)).

¶ 9                                    B. Pretrial Proceedings

¶ 10        Defendant expressed a desire to represent himself or hire his own attorney but was appointed counsel in the interim. Throughout the pretrial proceedings, defendant often attended hearings where he was directly and repeatedly informed of the charged offenses and their elements, classes, and sentencing ranges.

¶ 11        Specifically, during a pretrial hearing in 2017, the trial court told defendant that "the charges [he is] facing in this case [include] one count of aggravated battery. That's alleged to be *** a Class 1 felony." He indicated he understood.

¶ 12        In June 2021, the following exchange occurred between the trial court, defendant, and Michael Regnier, who represented the State:

>           "THE COURT: All right. You understand that you are faced right now with an indictment charging two counts of aggravated battery?
>
>           [DEFENDANT]: Yes.
>
>           THE COURT: They are Class 2 felonies. Is he—Sorry. Count 1 is aggravated battery. That's a Class 2 felony. Class 1 felony? What am I missing here?
>
>           MR. REGNIER: Class 1 felony for possession of a weapon by felon.
>
>           THE COURT: That's Count 2. Is Count 1 a Class 2? It says Class 1.
>
>           MR. REGNIER: It is a Class 1. It alleges great bodily harm.
>
>           THE COURT: Okay. So you are facing two Class 1 felony offenses. What is the sentencing on this? Is he mandatory Class X?

MR. REGNIER: Yes. On each count.

THE COURT: Consecutive or concurrent with each other?

MR. REGNIER: They would run concurrent.

THE COURT: All right. These are Class 1 felonies. If you are found guilty of one or both of them, you face a minimum six years, a maximum 30 years; and that would be consecutive to whatever sentences you are serving right now plus a three year parole.

Do you understand that?

[DEFENDANT]: Yeah. We understand.

THE COURT: Okay. And it's alleged specifically that on February 13th in committing a battery you caused great bodily harm to Correctional Officer Zachary Sereg in that you stabbed him about the head knowing him to be a correctional institution employee of the State of Illinois—

[DEFENDANT]: Right.

THE COURT: —engaged in the performance of his authorized duties. Do you understand that?

[DEFENDANT]: Yep."

¶ 13   In May 2022, defendant was found fit and was permitted to proceed *pro se* if he wished. He confirmed that he wished to do so.

¶ 14   In November 2022, the State clarified that defendant was not eligible for Class X sentencing.

"MR. REGNIER: Right. When this case was charged, he would have been mandatory Class X; but due to subsequent law changes regarding what would be

required for that; namely, a forcible felony, he is extended term eligible, Judge.

THE COURT: Only extended term?

MR. REGNIER: It's up to 30 years as it's a Class 1.

THE COURT: Okay."

¶ 15     During the same hearing, the trial court instructed as follows:

"I am required to advise you the underlying indictment charges a Class 2 felony offense of aggravated battery alleged to have occurred on February 13th of 2017. Specifically that you knowingly caused great bodily harm to correctional Officer Zachary Sereg, S-E-R-E-G, in that you stabbed him about the head knowing him to be a correctional institution employee of the State of Illinois Department of Corrections who was engaged in the performance of his authorized duties."

The court then corrected itself moments later: "So, sir, you understand Count 1 which is the aggravated battery is a Class 1 felony, not a Class 2 felony?" Defendant indicated that he understood.

¶ 16                                 C. Trial

¶ 17     Defendant was still representing himself when trial commenced in March 2023. The element pertaining to aggravation and great bodily harm was raised in numerous instances. Specifically, before the jury came in to begin *voir dire*, the trial court indicated to defendant that the case pertained to allegations of great bodily harm. During *voir dire*, the court repeated to the prospective jurors that the allegations pertained to great bodily harm. Defendant did not object.

¶ 18     In opening statements, without objection from defendant, Regnier told the jury:

"You will also hear the harm described by Officer Sereg as great bodily harm. What you will hear him testify to is that the puncture wound on his head was

then seen later that day at the emergency room here in Pontiac. He missed some work; and it had to be closed up. It was bleeding profusely."

¶ 19 Indeed, Officer Sereg testified that he was struck in the head. On direct examination, he was asked whether he bled, whether he bled "[p]retty bad," and the extent of his medical treatment. He also testified that he bled significantly and initially went to the health care unit of a hospital before being transported by ambulance to the emergency room. He stated that he could not finish his shift and ultimately missed six days of work. Despite the fact that the degree of Sereg's injuries would not be relevant to a claim based simply on bodily injury (as opposed to great bodily injury), defendant objected to none of the examination of Sereg or his testimony.

¶ 20 During closing arguments, Regnier stated to the jury, without objection:

"What you are going to be called to decide today is in the jury instructions which will be presented to you by Judge Bauknecht. The law. Whether or not this Defendant committed aggravated battery. If he stabbed Officer Sereg in the head at a time when he knew Officer Sereg was a correctional officer engaged in his authorized duties and whether or not that stabbing caused great bodily harm to Officer Sereg. We heard that it caused a ton of blood, a large amount of blood. I think they said profuse. That it was a puncture wound in his head that was unable to be healed by the prison staff; therefore, he was transported by ambulance to the ER where it was closed up that day; and it was six days later that he was able and allowed to get back to work."

¶ 21 At the close of evidence, the trial court provided the following jury instruction, in pertinent part: "A person commits the offense of aggravated battery when he knowingly, and by any means other than by discharge of a firearm, causes great bodily harm to an individual whom

the person knows to be a correctional institution employee performing his official duties." The court also instructed that "[t]o sustain the charge of aggravated battery, the State must prove the following propositions: First proposition, that the Defendant knowingly caused great bodily harm other than by discharge of a firearm to Zachary Sereg." No objection was made.

¶ 22 The jury ultimately returned a guilty verdict on both counts.

¶ 23                                    D. Sentencing

¶ 24 Sentencing took place in April 2023, and defendant continued to appear *pro se*. At the hearing, the trial court began by ruling on defendant's three prior "post-trial motions," stating that they were incoherent, lengthy, and had no basis in fact or law. Later during the same hearing, defendant stated "I really don't want to be here *** So I'm done. You all do this without me." When the court inquired whether sentencing should proceed without him, defendant said, "Yeah, yeah. I'm done. I'm done." When asked to confirm his answer, defendant said, "That's right, that's right." When asked if he wanted to know his appeal rights, he said, "I don't want to know about none of this shit." Defendant was then removed from the courtroom in accordance with his request.

¶ 25 The trial court then identified the offenses on which it was sentencing defendant as Class 1 offenses, stating that he "is extended term eligible on these Class 1 felonies for which he's been found guilty up to 30 years in the [DOC]"; "[It] will have a judgment of conviction entered on Counts 1 and 2, both of those being Class 1 felony offenses"; and "[T]his is a very serious matter, Class 1 felony offenses."

¶ 26 The trial court then sentenced defendant to a term of 28 years' imprisonment in the DOC on each count, to "run at 85% good time concurrent with each other." The court then entered a written order reciting that it was sentencing defendant to 28 years on both convictions, referencing each as a Class 1 offense. However, with respect to the charge of aggravated battery

leveled in count I, the order referenced the statutory citation corresponding to a Class 2 offense. 720 ILCS 5/12-3.05(d)(4)(i) (West 2016).

¶ 27                                    E. Direct Appeal

¶ 28           Defendant filed a *pro se* notice of appeal on May 1, 2023, and the circuit clerk also issued a notice of appeal on his behalf on May 8, 2023. See Ill. S. Ct. R. 606(a) (eff. Mar. 12, 2021) (providing that the clerk is to file a notice of appeal at a defendant's request). On the latter date, the docket reflects the trial court's appointment of appellate counsel for defendant. On May 18, defendant filed another *pro se* notice of appeal, as well as a *pro se* motion for, among other things, reconsideration of his sentence, alleging in part that the "sentences *** do not conform to statutory guidelines." Throughout the remainder of 2023 and part of 2024, defendant never requested a hearing on his motion, but he made numerous filings pertaining to obtaining "the complete record" of trial proceedings for his appeal. These filings include a notice of motion, a petition to be given records, a motion for trial transcripts and common law records, a petition for *habeas corpus*, an affidavit, a notice of appeal, a docketing statement, and more. The record does not reflect that the court made a ruling, or was asked to make a ruling, on the motion for reconsideration.

¶ 29           Defendant raised only one issue in his direct appeal: whether the trial court failed to conduct a proper fitness hearing. We affirmed the conviction and sentence. *Bealer*, 2024 IL App (4th) 230406-U, ¶ 41. The record in the direct appeal, of which we may take judicial notice (see *People v. Johnson*, 2021 IL 125738, ¶ 54; *People v. Green*, 2024 IL App (1st) 231167, ¶ 3 n.1), shows that defendant then initiated multiple *pro se* filings, including a petition for rehearing, which was denied. The Illinois Supreme Court denied defendant's petition for leave to appeal, and the United States Supreme Court denied his petition for a writ of *certiorari*. *Bealer*, 2024 IL App (4th) 230406-U, *pet. for leave to appeal denied*, No. 131217 (2025), *cert. denied*, 145 S. Ct. 1974 (2025).

¶ 30                              F. Postconviction Proceedings

¶ 31            In May 2025, defendant filed an over 400-page petition under the Act, raising numerous claims of ineffective assistance of counsel, including claims based on his "conviction, where counsel raise issue not indicted and convicted so he did not defended [*sic*] charges indicted on also convicted on"; an "unconstitutional sentencing of 2 terms of 28 years where conviction is not based on indictment etc"; "unconstitutional sentencing of 28 years where mitigation records of (PSI) concealed from PSI and sentencing hearing (Exhibit 2)"; and "[w]hether motion 58 page for unconstitutional sentencing filed and appellate counsel conceal facts of it[s] existence from appeal. And the notice of appeal for sentencing. Ineffective assistance of counsel."

¶ 32            In June 2025, the trial court summarily dismissed the petition because its claims were frivolous and patently without merit and defendant did not attach the requisite evidence under section 122-2 of the Act (725 ILCS 5/122-2 (West 2024)).

¶ 33            This appeal followed.

¶ 34                                     II. ANALYSIS

¶ 35            The Act provides a three-stage process for a criminal defendant to claim that a substantial violation of his federal or state constitutional rights occurred at the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (West 2024); *People v. Tate*, 2012 IL 112214, ¶¶ 8-9. At the first stage, the trial court must review a *pro se* petition and may dismiss it if it is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2024). Petitions that are not summarily dismissed advance to the second stage, where counsel is appointed. *Id.* § 122-4. Petitions that make a substantial showing of a constitutional violation advance to a third-stage evidentiary hearing. *Tate*, 2012 IL 112214, ¶ 10.

¶ 36    "To survive first-stage dismissal and advance to the second stage, a petition need only set forth the gist of a constitutional claim." *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 21 (citing *People v. York*, 2016 IL App (5th) 130579, ¶ 15). The petitioner "need not set forth the claim in its entirety." (Internal quotation marks omitted.) *People v. Brown*, 2017 IL App (1st) 150203, ¶ 23. "Petitions filed *pro se* must be given a liberal construction and are to be viewed with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48. However, a petition may be summarily dismissed at the first stage if it has "no arguable basis either in law or in fact," such as when the claim is contradicted by the record. *People v. Hodges*, 234 Ill. 2d 1, 11-12, 16-17 (2009).

¶ 37    The issues raised in defendant's postconviction petition pertain to alleged ineffective assistance of counsel, which is evaluated under the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 674 (1984). First, "a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness," and second, "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Henderson*, 2013 IL 114040, ¶ 11 (citing *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010)). "[F]ailure to establish either proposition will be fatal to the claim." *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996). Consequently, at the first stage of a postconviction proceeding, a petition asserting ineffectiveness of counsel must show that it is at least "arguable" that counsel's performance was deficient and that it prejudiced the defendant. *Hodges*, 234 Ill. 2d at 17.

¶ 38    "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. West*, 187 Ill. 2d 418, 435 (1999). Appellate counsel need not brief every conceivable issue on appeal. *People*

*v. Simms*, 192 Ill. 2d 348, 362 (2000). Counsel's choice as to which issues to pursue is entitled to deference. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001).

¶ 39 In assessing the trial court's dismissal of a postconviction petition, our standard of review is *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 40 A. Sentencing

¶ 41 Defendant argues that he "did not challenge the indictment" and instead "challenged [the] unauthorized sentence." Specifically, he takes the position that he was convicted of a Class 2 offense but was sentenced outside of that range (*i.e.*, as if both offenses of which he was convicted were Class 1 offenses). So stated, the questions presented here are (1) of which offense was defendant convicted, and (2) did defendant receive a sentence within the permitted range for that offense? Defendant does not challenge the application of an extended term.

¶ 42 Both the indictment and the judgment order explicitly state that defendant was charged with, and then convicted of, a Class 1 offense. However, both also cite to a section of the Code relating to a Class 2 offense. This mis-citation gives no reason to conclude that defendant was not convicted of the Class 1 offense for which he was tried. The Illinois Supreme Court has stated that "[i]n a criminal case the pronouncement of the sentence is the judicial act which comprises the judgment of the court. The entry of the judgment order is a ministerial act and is merely evidence of the sentence." *People v. Allen*, 71 Ill. 2d 378, 381 (1978) (citing *People v. Moran*, 342 Ill. 478, 480 (1930)). As such, "[w]hen an oral pronouncement of judgment and a trial court's written judgment are in conflict, it is the oral pronouncement that is controlling." *People v. Savage*, 361 Ill. App. 3d 750, 762 (2005); see *People v. Mosley*, 2015 IL 115872, ¶ 8, n.5 (reference to wrong statutory citation in the transcript and order is treated as a scrivener's error when the court's remarks made clear its intention).

¶ 43    The trial court's oral pronouncements in the record unequivocally rebut defendant's assertion. Throughout the proceedings, including at the sentencing hearing, the court repeatedly described the offense under count 1 as a Class 1 offense and explained that it carried a sentence of up to 30 years. The court affirmatively stated that it was not a Class 2 offense (nor a Class X offense), and it frequently asked defendant if he understood; he always responded that he did. The distinction between the two versions of aggravated battery was emphasized on multiple occasions.

¶ 44    Furthermore, the pretrial conferences, jury instructions, opening and closing statements, and testimony were consistent with the fact that the element of "great" bodily harm was particularly at issue. This is significant because the two versions of aggravated battery at issue differ only on that point: aggravated battery under section 3.05(d)(4) requires bodily harm while aggravated battery under section 3.05(a)(3) requires "great" bodily harm. 720 ILCS 5/12-3.05(a)(3), (d)(4) (West 2016). The testimony at trial shows that defendant stabbed Sereg in the head, causing him to ultimately miss six days of work to seek medical attention and recover. He initially sought treatment at a health care unit of a hospital before being transported by ambulance to the emergency room. Defendant made no objection to such testimony. This record makes it clear that the trial and conviction was for the Class 1 version of aggravated battery based on *great* bodily harm.

¶ 45    Finally, while defendant disclaims any suggestion that he is challenging the sufficiency of the indictment in this case, the State has argued it in that context, and defendant has responded. Consequently, to avoid any doubt, we also explore the issue as it relates to the sufficiency of the indictment. We again find that the record affirmatively rebuts any suggestion that defendant was indicted for a Class 2 offense.

¶ 46    A criminal defendant has the fundamental right to be informed of the nature and

cause of criminal accusations made against him. *People v. Libricz*, 2022 IL 127757, ¶ 35. However, the error in the indictment was apparent to defendant before trial, and he did not raise the issue until after trial. Thus, the applicable test is whether the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Cuadrado*, 214 Ill. 2d 79, 86-87 (2005). As already explained, the record is rife with evidence that before, during, and after trial, defendant was informed of the nature of the offenses, including their applicable elements, classes, and sentencing ranges. Indeed, the indictment itself clearly alleges that defendant caused "great" bodily harm to Sereg. The record makes clear that defendant was aware of the State's need to prove great bodily harm; as such, the error in the indictment did not inhibit him in the preparation of his defense. It would be frivolous to argue that defendant was prejudiced by the mis-citation in the indictment, as that claim is rebutted by the record. *Id.* at 87.

¶ 47      Overall, though the indictment and judgment cited the wrong statute, every relevant stage of the proceeding shows that the offense on which defendant was tried and convicted was Class 1 aggravated battery based on great bodily harm. Because defendant was convicted of a Class 1 offense, and because his sentence was within the range applicable to a Class 1 offense, defendant's argument that he received an improper sentence plainly lacks merit. It is, then, not arguable that appellate counsel's representation was deficient for failing to raise the issue or that defendant was prejudiced by that choice.

¶ 48                    B. Reconsideration and Preservation of Issues

¶ 49      Defendant also argues that the pendency of his unresolved motion to reconsider his sentence in the trial court meant that his appeal was premature. He contends that had appellate

counsel flagged the unresolved postsentencing motion, the matter might have been remanded to the trial court and addressed. He further contends that if this had been done, he would also have avoided any forfeiture of the issue on appeal and would not have had to bring it to our attention in the context of a claim of ineffective assistance of appellate counsel.

¶ 50 While a component of defendant's argument might imply that we were without jurisdiction to hear the direct appeal of his conviction, we do not understand him to be lodging a collateral attack against the validity of our prior decision. Indeed, even if he were, it is unclear whether, having litigated the prior appeal to its conclusion without raising a jurisdictional objection, he would have the ability to attack it now. See *In re Marriage of Mitchell*, 181 Ill. 2d 169, 175-76 (1998) (noting the trend of modern authority severely limits parties' ability to collaterally attack a fully contested judgment, even if a defect in the judgment "could be characterized as pertaining to subject matter jurisdiction"). Furthermore, even if defendant were attempting to collaterally attack our prior decision, it does not appear that the Act would be a viable vehicle for doing so. The Act is designed as a remedy for violations of defendant's *constitutional* rights (725 ILCS 5/122-1(a)(1) (West 2024); *Coleman*, 183 Ill. 2d at 380), and it is unclear whether the suggested jurisdictional question implicates an individual constitutional right.

¶ 51 Instead, we focus on the alleged constitutional violation defendant explicitly asserts here: the claim that his appellate counsel was ineffective. Though defendant presents multiple facets of the issue, all arguments raised on appeal rest on the same flawed foundation: the assertion that defendant was in reality convicted of a Class 2 offense. As noted above, though defendant's petition need only present the "gist" of a constitutional claim to survive the first stage, it can be summarily dismissed at the first stage when its basis is contradicted by the record. *Hodges*, 234 Ill. 2d at 16. We have concluded that the record unmistakably contradicts defendant's assertion

that he was convicted of a Class 2 offense.

¶ 52    The foregoing conclusion provides all we need to complete both prongs of the *Strickland* analysis. With respect to the first prong, there is no viable argument that appellate counsel offered inadequate representation by not arguing that defendant was in reality convicted of a Class 2 offense when that conclusion is flatly contradicted by the record. With respect to the second prong, defendant cannot have been prejudiced by the failure to make or preserve an argument we find to be contradicted by the record. If the matter had been remanded to the trial court for hearing on his motion, or if the issue had been preserved for direct appeal and raised there, the outcome would have been the same: the argument would be found to be facially lacking in merit, as it is contradicted by the record.

¶ 53                    III. CONCLUSION

¶ 54    All arguments defendant raises on appeal stem from his assertion that he was convicted of a Class 2 offense but improperly sentenced as though it was a Class 1 offense. We find that the premise of defendant's argument rests solely on isolated citations to the wrong section of the Code, but the record as a whole clearly establishes that defendant was charged with, and convicted of, a Class 1 offense. Consequently, defendant has no arguable basis to claim that his appellate counsel was ineffective for not presenting or preserving this claim or that he was prejudiced as a result. The trial court properly dismissed his claims at the first postconviction stage.

¶ 55    For the reasons stated, we affirm the trial court's judgment.

¶ 56    Affirmed.